SALISBURY SAVINGS SOCIETY *vs.* ELEANOR F. CUTTING, ADMINISTRATRIX, AND ANOTHER.

Whether a deed with covenants of title given before the grantor acquires title to the land conveyed, and placed on record, is to prevail over a deed given after the title is acquired to a purchaser who takes in good faith, for value, and with no notice of the previous deed: *Quære.*

If as a general rule the later deed is to prevail, yet it can not where it is a mortgage given for a pre-existing debt.

Nor where the circumstances are such as reasonably to put the second grantee upon inquiry as to the existence of the prior deed.

SUIT for a foreclosure; brought to the Superior Court in Litchfield County. The facts were found by a committee.

On the 3d of May, 1872, William E. Cutting procured from the plaintiffs a loan of $1,400, and on the same day mortgaged to them as security for it, by a warranty deed, the property now sought to be foreclosed, which consisted of about a quarter of an acre of land in Salisbury with a dwelling house and tin shop on it. The mortgage was at once put on record.

At this time Cutting had no legal title to the premises conveyed. On the 8th of January, 1872, he had purchased the land, then without buildings upon it, for $200, of one Coffing, who had agreed to convey it to him when that sum was paid, but had not done so when the mortgage was given to the plaintiffs, and who died soon after and before making the conveyance. On the 16th of July, 1874, Cutting made an application to the court of probate, upon which the administrators of Coffing's estate were cited in and heard, for an order that the administrators perform the agreement and convey the land to him; and such an order was made on the 23d of July, and the land conveyed by them to Cutting by deed dated the 3d of August, of the same year, though not delivered until December 1st, 1874, and not recorded until December 5th. The loan was obtained of the plaintiffs to pay the cost of erecting the buildings on the land and was used for that purpose, the mortgage being

taken after they had been erected. The plaintiffs made no examination of the land records of the town at the time they took their mortgage.

John Scoville, the principal defendant, was the father-in-law of Cutting, and lived at Ashley Falls, in the state of Massachusetts. He had loaned him money from time to time, and on the 1st day of December, 1874, Cutting gave him his note for $2,483, and on the 5th of December made a mortgage to him of the real estate in question as security for the note. At the time he took the mortgage he made no inquiry of Cutting as to any prior encumbrance on the property, but he took the mortgage in good faith and without any knowledge of the encumbrance. Of the $2,483 for which the note was given, the greater part was advanced after the mortgage to the plaintiffs had been given by Cutting and put on record.

The petition of Cutting to the court of probate for an order that the administrators of Coffing convey the land to him, recited the agreement of Coffing to convey it when he should be paid the sum of $200, and the deed of the administrators referred to the petition and order on the probate records and stated that the deed was given under the order.

The amount due the plaintiffs on their note and mortgage was found to be $1,677.22 and that due to Scoville on his note and mortgage $3,704. The mortgaged property was found to be worth $1,800.

Cutting had since died, and the defendants were his administratrix, and John Scoville.

Upon these facts the court (*Hitchcock, J.,*) rendered judgment for the plaintiffs, foreclosing the defendants. The defendant Scoville brought the record before this court by a motion in error.

*J. D. Hardenbergh,* for the plaintiff in error.

1. The defendant Scoville had no notice of the plaintiffs' claim, either actual, presumptive or constructive. The committee finds that he took the mortgage in good faith and without any knowledge of the encumbrance. The record

of the plaintiffs' mortgage, given two years before the mortgagor acquired title, was not notice to Scoville. He was not bound to search for such an instrument. He was not bound to go back of the delivery of the deed to Cutting. "The purchaser is not charged with notice from the record of conveyances from his grantor, prior to such grantor's acquisition of title. In such case the subsequent purchaser would not be estopped by the record of a mortgage from his grantor, prior to the date of his grantor's deed. To hold otherwise would be to impose upon the purchaser the duty of examining the record indefinitely." Wade, on the Law of Notice, § 214. "But upon both principle and authority, it seems more consonant with the spirit of the recording acts to absolve purchasers from the duty of examining the record of conveyances from their grantors, prior to the time when they had a title to convey." Id., § 216. "Such a result seems to be at variance with the recording acts of this country, which are generally held not to require an examination of the record prior to the period at which the title conveyed vested in the vendor." H. & W. notes to 3 Smith's Lead. Cas., (7th ed.), 692. See also Bigelow on Estoppel, 359; Rawle on Covenants for Title, (4th ed.), 428. If we claimed adversely to Cutting it might be said that his possession was presumptive notice, but as we claim under him and knew that he had no title until the day we took our mortgage, his possession could not be notice to us that he had conveyed a title two years before he had acquired it. At all events it was merely presumptive, and the finding rebuts the presumption. The instrument under which the plaintiff claims, taken two years before the grantor acquired title, was not within the contemplation of our recording acts. "Where the deed from the vendor is not recorded, a deed of trust or mortgage, given by his vendee, for the purchase money, will not be notice to subsequent purchasers of the unrecorded deed. There is nothing to guide the purchaser beyond the record title of the vendor, and the discovery of the mortgage for the purchase money would be purely accidental." Wade on the Law of Notice, § 207, and cases cited.

2. The parties therefore stand in precisely the same position they would have stood in, if the instrument under which the plaintiffs claim, had not been put on record. The plaintiffs say that even then we are estopped by the covenants of their mortgage. We deny that such is the law. It is in direct conflict with the recording acts. Gen. Statutes, p. 353, sec. 11; 2 Smith's Lead. Cas., (7th Am. ed.), 692; Rawle Cov. for Title, (4th ed.), 428; Bigelow on Estoppel, 331; *Way* v. *Arnold*, 18 Geo., 182; *Faircloth* v. *Jordan*, id., 350; *Great Falls Co.* v. *Wooster*, 15 N. Hamp., 412; *Lessee of Buckingham* v. *Hanna*, 2 Ohio St., 551; *Calder* v. *Chapman*, 52 Penn. St., 359; *Jones* v. *Kearney*, 1 Dru. & War., 159; *Lloyd* v. *Lloyd*, 4 id., 369. It is also contrary to the statute of frauds. Bigelow on Estoppel, 358; Rawle on Cov. for Title, 430; *Bivins* v. *Vinzant*, 15 Geo., 521; *Faircloth* v. *Jordan*, 18 id., 350. The modern covenant of warranty does not pass the land as to subsequent purchasers without notice. It does not act as a technical estoppel, but simply as a rebutter. Bigelow on Estoppel, 355; 2 Smith Lead. Cas., (H. & W. notes, 7th ed.), 693.

3. The equities are with the defendant Scoville. He took his mortgage, as the committee has found, in good faith without notice. The plaintiffs were guilty of laches. They knew, or were bound to know, that Cutting had no title; they took their mortgage with their eyes open, and assumed all the risk. "But the strongest arguments against permitting the conclusion of the covenant or recitals in a deed to extend beyond the person of the grantor to an estate which he does not hold at the time, is that it necessarily tends to give a vendee, who has been careless enough to buy what the vendor has not got to sell, a preference over subsequent purchasers, who have expended their money in good faith, and without being guilty of negligence." 2 Smith Lead. Cas., (7th ed.), 700. They could have seen to it that the contract between Coffing and Cutting was put on record, and thus supplied the missing link in their chain of title, which might have led the defendant to their mortgage. Our

statutes provide that such a record shall secure to a party the equitable title that the contract creates. This would have protected the plaintiffs, since such an equitable title could be conveyed or mortgaged, and would have been full legal notice to us. Gen. Statutes, p. 354, sec. 13.

*C. B. Andrews* and *D. T. Warner*, for the defendants in error.

1. It clearly appears from the finding that Cutting had an equitable interest in the premises from the time of his taking possession of the same, though he did not have the legal title; for the finding shows that he was in possession " claiming to own the same," and that he had erected. a building thereon, which then constituted, as it does now, the principal value of the property. The administrators of Coffing's estate recognized this equitable interest, and conveyed nothing but the land to Cutting. The court of probate also recognized Cutting's equity in the premises. It was an interest that he could sell and convey or mortgage. Gen. Statutes, p. 354, sec. 13. It was such an equitable interest as a court of chancery would have protected by decreeing a specific performance of the contract. *Green* v. *Finin*, 35 Conn., 178.

2. Cutting's mortgage with warranty to the plaintiffs, he afterwards having acquired the legal title, is just as effectual as if he had had the legal title when he gave the mortgage. Where one having no title to land conveys the same with warranty by a deed which is duly recorded, and afterwards acquires a title, and conveys to another, the second grantee is estopped to aver that the grantor was not seized at the time of his conveyance to the first grantee. 3 Washb. Real Prop., 110, sec. 50; 1 Swift Dig., 364. It has repeatedly been decided in Connecticut, that if one who conveys lands with warranty, but without title, subsequently acquires title, he *and all claiming under him* are estopped from setting up such title against the first grantee. The subsequent title enures to the benefit of the first grantee. *Coe* v. *Talcott*, 5 Day, 92; *Hoyt* v. *Dimon*, id., 483; *Dudley* v.

*Cadwell,* 19 Conn., 226. The same doctrine prevails in other states. *Somes* v. *Skinner,* 3 Pick., 52 ; *White* v. *Patten,* 24 id., 324 ; *Russ* v. *Alpaugh,* 118 Mass., 376 ; *Tefft* v. *Munson,* 57 N. York, 97 ; *House* v. *McCormick,* id., 310 ; 2 Smith Lead. Cas., 625 ; Rawle on Cov. for Title, 392 ; Bigelow on Estoppel, 344, 347.

3. The defendant Scoville had constructive notice of the existence of the plaintiffs' mortgage. There is no difference in legal effect between actual and constructive notice. 3 Washb. R. Prop., 283 ; *Sumner* v. *Rhodes,* 14 Conn., 139. Open and notorious possession is sufficient to put a purchaser on inquiry as to the existence of a deed. Especially so when it had continued for more than two years, and been accompanied by acts of ownership such as enclosure and · the erection of a building. 3 Washb. R. Prop., 284. The law imputes to a purchaser a knowledge of all facts relating to the same land on the muniments of title which it was necessary for him to inspect in order to ascertain the sufficiency of such title. 3 Washb. R. Prop., 292. An examination of the muniments of title in this case would have disclosed to the defendant the existence of the plaintiffs' mortgage ; and this, with the administrators' deed to Cutting, and the references therein to the proceedings in the probate court, would have satisfied any honest inquirer that Cutting had an equitable interest in the premises when he mortgaged · the same to the plaintiffs. The equities are all with the plaintiffs, for their money paid for the improvements on the land which to-day constitute its principal value, and Scoville had ample constructive notice. Therefore it would be inequitable to permit him to be prior in right, when his mortgage is not only so long subsequent in time to the plaintiffs', but the debt itself claimed to be secured thereby has mostly accrued since the record of their mortgage.

PARK, C. J. This case has been argued before us as if it necessarily involved the question whether a deed given with covenants of warranty before the grantor acquires title to the land conveyed, is to prevail over a deed given, after the

title is acquired by the grantor, to a purchaser who takes it in good faith and with no knowledge of the previous deed and for value. If we were called upon to decide this question we should regard it as one of very serious difficulty, inasmuch as in sustaining the later deed we should have to deny the controlling application to the case of the well settled principles of estoppel, while in sustaining the prior deed we should have to violate the entire spirit of our registry system, which it is the policy, and we may say in every other case the unyielding policy, of the law to sustain.

But there are two points in the present case, either of which we think delivers it from the control of that question, and which will enable us to decide it upon its special facts.

1. It does not appear that the defendant was a purchaser for value. The judgment below was for the plaintiffs, and as the defendant has brought the proceeding in error, it is necessary that this fact should appear, expressly or by necessary implication, upon the record. All that is found is that "the greater portion" of the defendant's claim accrued after the deed was given to the plaintiffs. It is clear therefore that, so far as the portion which accrued before is concerned, the defendant was not a purchaser for value, and that so far there is no error in the judgment. Now what is found with regard to the remainder of the defendant's claim? He sets up in the answer, and this part of his answer is found true, "that on the 5th day of December, 1874, said Cutting owed him $2,483, as evidenced by his promissory note for that amount, dated at Ashley Falls, Massachusetts, December 1st, 1874"; and that "on said 5th day of December, 1874, the said Cutting, to secure said note, mortgaged to him" the land in question. By turning to the deed, a copy of which is annexed to the finding, it appears that the mortgage to the defendant was executed at Salisbury in this state, the presumption being that it was sent to the defendant in the state of Massachusetts after it was recorded, and that he was not present at its execution; this point however not being important. Here then, in the defendant's statement of his own case, the most that is

averred is, that on the first day of December, 1874, the mortgagor gave him a note for the mortgage debt—but it does not appear that the debt had not all accrued before the note was given. The fact that a considerable part of it had accrued three years before makes it very probable that the rest accrued by occasional loans or advances, and that at the time the note was given no additional advance was made. At any rate it is clear that we can not assume, for the purpose of finding error in the record, that any money was then advanced, when no such fact appears, either upon the finding or upon the defendant's answer. If, as we must infer, the defendant was not a purchaser for value, it is very clear, upon well settled principles, that he can not prevail in equity over the plaintiffs, who advanced the whole amount of their mortgage debt when they took their mortgage.

2. We think that upon the facts found the defendant was fairly put upon inquiry as to the plaintiffs' mortgage, and does not stand before the court as a *bonâ fide* purchaser without notice. It is true that he avers in his answer "that the mortgage was taken by him in good faith and without any knowledge or notice on his part that there was any incumbrance on said land in favor of the Salisbury Savings Society or any other person;" and that the committee has found this part of his answer true. But without such actual knowledge the facts may be such as to have made it his duty to inquire after such prior mortgage, and sufficient to charge him in law with notice of what on such inquiry he would have found. Let us see what these facts are. The defendant was the father-in-law of Cutting, the mortgagor, and while from this relation and his residence in the vicinity he would be likely to be better informed than most men with regard to his property and business, it appears that he was in fact, during all the time covered by these transactions, making him advances or loans of money, having, as we have seen, advanced him a considerable part of the $2,483 for which he finally took his note, before the plaintiffs took their mortgage. It is hardly possible that his pecuniary

interest in Cutting's prosperity should not have led him to inform himself, with his special opportunity as well as reason for asking the information of Cutting, as to the property transactions of the latter.  He would thus have known of his contracting for the purchase of the lot in question, and of its small value, found to be only $200 at the time of the purchase; of Cutting's entering into possession, an indication of itself of his having acquired some kind of right; of his erection of a building thereon, which was found to be of the value of fourteen hundred dollars; of his having no means of his own for such an outlay and of the money necessarily having been procured as a loan; and it may be inferred from all the facts that he must have known that if he had procured such a loan it must have been on some security, and almost necessarily upon the property.  Now when, in these circumstances, he took his mortgage, as it is found, without making any inquiry of Cutting as to any prior incumbrance, it seems almost like an intentional avoidance of an inquiry, and as if he desired to take his chance for the securing of his accumulating debt on the property, taking what he could get and holding what he could hold.

But there is a further fact in this connection that deserves notice.  The mortgage to the defendant refers for fuller particulars about the property to the probate records, giving the volume and page.  These records, at the place referred to, show a petition of Cutting, dated July 16th, 1874, stating the contract of Coffing, (who had owned the property and who had since died,) dated January 8th, 1872, for the conveyance of the lot in question to him for the consideration of $200, and praying that Coffing's administrators might be directed to give him a deed of the premises.  The defendant may properly be held chargeable with notice of all that appears upon this record.  He therefore knew that three years before his own mortgage was taken Cutting had a contract for a conveyance of the land in question, and consequently an equitable title; and that this equitable title he might have conveyed or incumbered.  Indeed under

a statute which had then been in force many years, Cutting could have had his contract recorded and thus his equitable title made secure. It was the defendant's duty to search the records and make sure that this equitable title, which for aught he knew had thus been put on record, had not been conveyed away or incumbered, and was especially his duty to make inquiry with regard to the matter of his son-in-law, who presumably would not have deceived him, especially in view of the fact that the latter had, immediately after taking the contract, entered into possession and expended fourteen hundred dollars in the erection of a building on the lot.

Upon all the facts of the case we can not regard the defendant as a purchaser either for value or without notice of the title of the plaintiffs.

We do not find any error in the judgment complained of.

In this opinion the other judges concurred.

NOTE. The question which the court leaves undecided in the foregoing case—whether a deed given with covenants of title before the grantor has acquired any title to the land conveyed, is to prevail over a later deed given, after the grantor has acquired title, to a purchaser who takes it in good faith and with no knowledge of the previous deed and for value—is of great interest to the profession and importance to the public. As the Chief Justice well remarks, if the later deed is sustained it violates the well settled principles of estoppel; if the prior one, the entire spirit of our registry system.

The weight of authority is in favor of the prior deed. There is a question made as to the precise mode in which that deed operates in drawing to itself the title, whether it be by the covenants which it contains and which estop the grantor and his privies in estate, or by the warranty operating as a bar to the later title; but the authorities generally treat the case as one of estoppel, and give the estoppel its usual force not only against the grantor but against his privies in estate.

The prevailing doctrine on the subject is thus summarized by Mr. Washburn in his work on Real Property, (book 3, ch. 2, sec. 6, art. 50):—"So where one conveys land with warranty, but without title, and afterwards acquires one, his first deed works an estoppel, and passes an estate to the grantee the instant the grantor acquires his title. And such title would enure to the benefit of the first grantee by estoppel, to the exclusion of a second grantee, to whom the grantor shall execute a deed after having acquired a title; though it has been insisted that such a construction does violence to the spirit of the system of registration of deeds, which ordina-

rily requires that in taking a title one should only go back to the time his grantor acquired it and see that no *intermediate* incumbrance or conveyance shall have been made by him." And in the next paragraph he says:—" The doctrine here stated * * is probably too well settled to be now controverted;" but he proceeds to state that it has been repeatedly called in question by recent commentators and in some judicial opinions.

That the doctrine here laid down is in direct conflict with the entire spirit of our registry system can hardly be questioned. It is the policy of the law that all conveyances of title to land shall appear upon the public records, and in such a place and manner that a searcher of titles would readily find his way to them. Now it would not be claimed for a moment that the most expert searcher is in fault for not discovering the record of a conveyance made by a person who had no title. The rule clearly is, and must be, that the searcher is expected to look only to the chain of title, beginning in the case of each particular grantor only with the conveyance to him, and inquiring for any later conveyance made or incumbrance created by him. This is all that could be required of the utmost diligence, for it is not merely the immediate grantor who may have given a deed to some party before he acquired title, but any prior grantor may have done it, and its effect on the chain of title would be equally fatal, unless an adverse possession of fifteen years had established the title. There may have been twenty conveyances during that period, and any one of the grantors may have created an estoppel, while the grantee under the estoppel may have been in such a condition, from coverture, or infancy, or other cause, that an adverse possession may not have been able to settle the title within the ordinary period. It of course can not be required of a searcher of titles that he carry his investigation so far as to make sure that no such untraceable and really secret estoppel shall be anywhere lying in ambush to entrap the title.

In *Calder* v. *Chapman*, 52 Penn. St., 359, the question was whether, when the records showed an absolute conveyance to Calder from Chapman, it was necessary, in searching Calder's title, to go back of the conveyance of Chapman to him, so as to take in any possible conveyance made by Calder before he acquired title. The court say (p. 362):—" In searching for incumbrances or conveyances, the search against Calder would begin with his title from Chapman, and the search beyond would be against Chapman and those through whom he claimed; and a search against Calder during the same period would be considered an utter absurdity." In *Wood* v. *Farmere*, 7 Watts, 385, GIBSON, C. J., says:—" By the English principles of notice a purchaser is presumed to have known nothing which lay out of the course of his title; and I see nothing in our registry acts by which he is presumed to have known anything which lay not in it or was not connected with it." And in *M'Lanahan* v. *Reeside*, 9 Watts, 510, the same learned judge says that a creditor in search of a clew to the title, would not be bound to take notice of a conveyance not lying in the channel of the title, though actually recorded. In *Loan & Trust Co.* v. *Maltby*, 8 Paige, 361, it is said that a purchaser " is not required to search for mortgages upon the premises purchased, as against his grantor, previous to the time such grantor obtained his title thereto." And we have seen that

Mr. Washburn, in his work on Real Property, says that "the system of registration ordinarily requires that in taking a title one should only go back to the time his grantor acquired it, and see that no *intermediate* incumbrance or conveyance shall have been made by him."

It may therefore be taken for granted that the registration system does not require the later grantee to search the records for any possible conveyance made by the grantor or any of his grantors before he or some of them acquired title, and that he is therefore in no fault for not knowing of the existence of the prior conveyance. The record of that conveyance can operate against his title only in a technical way, and upon ground which is utterly unsupported by equity or reason. That ground is this:—By the estoppel the defendant is not permitted to deny that the mortgagor had a title when he made the first conveyance. He stands therefore, so far as the defendant's rights are concerned, as if he had a title at that time. If he had had a title when he made that conveyance, that conveyance would not have been good against the later grantee unless it was recorded, or he had actual notice of it. But it was recorded; so that the prior grantee's title became complete *by reason of his record*, when that record was one that the later grantee was not bound to look for, and could not have found upon any reasonable amount of search. The prior grantee's entire title, both by estoppel and by the record of this deed, rests upon mere fiction— a mere theory. To sustain his claim of title practical justice must be sacrificed to a mere artificial rule that has no foundation in reason. But law was intended to be a practical thing, the perfection of reason, doing justice among men and protecting substantial rights; breaking through, so far as possible, all mere matters of form for the sake of the substance.

The law has no policy which it cherishes more than the one that favors and upholds our registry system; and it would seem as if, in a conflict of that system with a mere theory, the whole current of professional opinion would be in favor of sustaining that system at the sacrifice of the theory. Indeed the theory was established as a part of the common law before the registry system was known, and therefore without reference to it. That system as the later established and as an outgrowth of the progress of society and the product of riper experience, should prevail over everything, no matter how embedded in the ancient law, that would defeat or embarrass its operation.

This view is strongly supported by occasional decisions, by dissenting opinions, and by the remarks of highly respectable commentators, in their consideration of this question. Thus Mr. Hare, in his notes to Smith's Leading Cases, (3 Smith Lead. Cases, 7th Am. Ed., 692, side p. 626,) protests vigorously against the prevailing doctrine, though basing his opinion in part on what he regards as its "inconsistency with the principles of the common law on which it assumes to be founded." But with regard to its conflict with the system of registration, he speaks as follows:—"But the strongest argument against permitting the conclusion of the covenants or recitals in a deed to extend beyond the person of the grantor to an estate which he does not hold at the time, is that it necessarily tends to give a vendee, who has been careless enough to buy what the vendor does not have to sell, a preference over subsequent purchasers who have expended

their money in good faith and without being guilty of negligence. Such a result seems to be at variance with the recording acts of this country, which are generally held not to require an examination of the record prior to the period at which the title conveyed vested in the vendor. To allow a title to pass by a conveyance, executed and recorded before it is acquired, may therefore be a surprise on subsequent purchasers, against which it is not in their power to guard, and is contrary to the equity which is the chief aim of the doctrine of estoppel as moulded by the liberality of modern times." Mr. Rawle in his work on Covenants for Title, says, (p. 428, 4th ed.):—" This result, when applied to the case of a *bonâ fide* purchaser without notice, can not harmonize with the spirit of the registry acts in force in this country, and leads to the position, which can not be considered as tenable, that a purchaser must search the registry of deeds, not only from the time when his grantor acquired title, but also for a series of years before that time, in order to discover whether he had previously made any conveyance (though without title) to any other person; and if the property has passed through several hands, a similar search must be made with respect to every one through whose hands the title has thus passed. Such a doctrine, thus carried to its logical results, can not stand the test of experience; and it is not to be wondered at that, in recent cases decided since these suggestions were first made, courts have distinctly held that, as against a subsequent purchaser without notice, the after-acquired title does not enure to a prior grantee." Wade (on the "Law of Notice," § 214,) says:—" The purchaser is not charged with notice from the record of conveyances from his grantor prior to such grantor's acquisition of title. In such case the subsequent purchaser would not be estopped by the record of a mortgage from his grantor, prior to the date of his grantor's deed. To hold otherwise would be to impose upon the purchaser the duty of examining the records indefinitely." Bigelow also, in his work on Estoppel, p. 331, contends that upon principle, aside from any consideration of the registry system, a former deed of warranty, before the grantor acquired title, does not hold the land against a subsequent purchaser without notice. In *Way* v. *Arnold*, 18 Geo., 181, it is held that, under modern conveyances, with or without warranty, title to land subsequently acquired does not pass to the grantee by estoppel, (sustaining the view of Mr. Hare, in his note to Smith's Leading Cases, before referred to,) while upon the conflict of the opposite doctrine with the system of registration, the court says (p. 193):—" We are strongly inclined to the opinion that our registry acts, under the modern form of conveyancing, are a virtual repeal of the doctrine of estoppel." The question was recently before the Supreme Court of Rhode Island, in the case of *McCuskee* v. *McEvey*, 6 R. Isl., 528. The majority of the court sustain the title of the prior grantee by force of the estoppel, though DURFEE, J., who gives the opinion of the court, speaks of the doctrine as " operating as a snare rather than as a protection to purchasers." POTTER, J., gives a dissenting opinion of great ability, which appears in 10 R. Isl., 606.

But, independently of the view we have been considering, there is another principle which, it would seem, can be properly applied to the case and which would bring us to the same result. It is a well-settled rule that

where a loss must fall upon one of two equally innocent parties it shall be borne by him whose act, however innocent, caused it. Now supposing the prior grantee, in taking a deed from a party who had no title, is to be regarded as equally free from negligence with the later grantee, who did his full duty in searching the records; yet it was the act of the former, in taking a conveyance in such an unusual manner, that caused the whole difficulty. Now does not the application of that well established rule put the loss upon the prior grantee rather than upon the later one?

But this is upon the supposition that the prior grantee is not in fault. Much more should he bear the loss where he has been clearly guilty of negligence. If he took his deed without knowledge of the want of title in his grantor, he would seem to have been guilty of gross carelessness in not examining the public records. If he knew he had no title and was willing to take his chance for his acquiring one, the case becomes almost one of fraud upon a person who purchases in good faith and for value after a title has been acquired. It would seem to violate every principle of equity to allow a party guilty of either to prevail over the innocent and diligent later purchaser.

In *Prince* v. *Case*, 10 Conn., 381, WILLIAMS, C. J., in giving the opinion of the court, says:—"The policy of our law is that titles to real estate shall appear upon record, so that all may in this way be informed where the legal estate is. But were this new mode of conveyance to prevail, [the acquisition of an interest in land by means of a mere license to build upon it] incumbrances might frequently be found to exist against which no vigilance could guard, no diligence protect. Our records would be fallacious guides; and when we had gained all the information they could give we should remain in doubt as to the title. It is much better to leave those who had ventured to rely upon the word or honor of another to resort to that word or honor for redress [or in this case to the covenant for title] than to suffer a person who had resorted to the official register to be defeated by secret claims of this kind. The law can not prefer the claims of those who take no care of themselves to those who have faithfully used all legal diligence. If a loss is to be sustained it is more reasonable that he who has neglected the means the law put into his power should suffer, rather than he who has used those means."

If a deed made when the grantor has no title is to be sustained by a mere estoppel against a *bonâ fide* purchaser, who takes his title after the grantor has acquired one, and with no knowledge, and really no means of knowledge, of the prior deed, it will be putting a premium upon negligence, and allowing an innocent party to suffer for the gross carelessness of another.