## Timothy C. Murphy et al. vs. Charles H. Schwaner

Second Judicial District, Norwich, April Term, 1911.

Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

Want of title in a lessor at the date of the delivery of the lease is no defense to an action for rent, provided the title was acquired before the commencement of the tenant's term.

One who guarantees the payment of rent under a written lease thereby recognizes the binding nature of its provisions upon the parties to it.

From the very nature of his contract, the liability of a guarantor or surety is ordinarily measured by that of the principal.

The fact that the lessors signed the written lease before the guarantor did, is immaterial, provided the latter executed the instrument before it became effective by delivery. Under such circumstances the lease and the guaranty will be deemed to have been executed at the same time, and therefore no other consideration for the guaranty is required than that moving between the lessors and the lessees.

Any material change in the terms of a written contract, made by the principal parties without the consent of the guarantor, will discharge the latter.

Having secured an option upon a dwelling-house the plaintiffs leased it and a one-story building to be erected in the rear, to be used as a moving-picture theater for one year from the time such premises were "ready for occupancy." The lease provided that the lessees might, at their own cost, make "any alterations in the premises that are necessary in the conduct of their business," and that they should provide "all fixtures needed by them" therefor. In an action against the defendant to recover rent, the payment of which he had guaranteed, the main issue was as to whether the plaintiffs had done all that was required of them to make the premises "ready for occupancy," and this depended upon whether the front of the remodeled structure was to be erected by them or by the lessees. *Held* that under these circumstances evidence of an antecedent oral agreement between the lessors and lessees was admissible, not to contradict or vary the terms of the written instrument, but to show the meaning which the parties themselves attached to the somewhat ambiguous expressions above quoted, which were presumably inserted in the lease to express their previous oral understanding, and in harmony with which such expressions might properly be construed.

Argued April 26th—decided June 15th, 1911.

Murphy *v.* Schwaner.

ACTION against the guarantor of a lease,* to recover rent, brought to and tried by the Superior Court in New London County, *Shumway, J.;* facts found and judgment rendered for the plaintiffs for $625, and appeal by the defendant. *No error.*

The defendant's contract of guaranty was as follows: "For and in consideration of the letting of the premises above described, and for value received, I guarantee the punctual payment of the rent and performance of the covenants in the above agreement mentioned to be paid and performed by said lessee, without requiring any notice of non-payment or non-performance, or proof of notice or demand being made, whereby to charge me therefor."

The complaint, dated May 21st, 1908, alleges that the premises were ready for occupation November 15th,

---

* The following are parts of the lease, to which the defendant's guaranty was attached:—

"This indenture, made by and between Timothy C. Murphy and William P. McGarry, both of Norwich, Connecticut, of the first part, and H. W. Myers and C. H. Schwaner, Jr., of New London, known as The Star Theater Company of the second part, witnesseth: that said party of the first part has leased and does hereby lease to said party of the second part the house known as 327 Main Street, together with a one story building to be erected in the rear of the said house and situated in said Town of Norwich, New London County, Conn., said premises to be used by the lessees as a moving picture theater or for any other business provided permission is given to the lessees by the lessors in writing. . . . It is agreed that the lessees may make any alterations in the premises that are necessary in the conduct of their business at their own cost for the term of one year from the time said premises are ready for occupancy A. D. 190  for the annual rent of Twelve Hundred Dollars payable in monthly payments of One Hundred Dollars each, to wit: on the first day of each month during the term in each year. Said party of the first part covenants with the said party of the second part; that they have good right to lease said premises in manner aforesaid, . . . and the said party of the second part covenants with the said party of the first part to hire said premises and to pay the rent therefor as aforesaid. . . . The lessees shall provide all fixtures needed by them in their business."

1907, and that the lessees have failed to pay any of the rent due since said date.

In his answer the defendant specifically denies the execution and delivery of the guaranty, and alleges that the plaintiffs had no title or right to lease the premises when the guaranty was given; that the guaranty was without consideration; that he understood that the term of the lease was to begin when said two buildings were fully completed, and that they were not so completed on the 15th of November; and that the plaintiffs and their lessees, both before and after the guaranty, fraudulently agreed that the building should not be fully completed in order to be ready for occupation.

The trial court has found these facts: In August, 1907, C. H. Schwaner, Jr., and H. W. Meyers, as partners, were engaged in the moving-picture theater business, and entered into negotiations with the plaintiffs with the view to hiring the premises described in the lease, provided the plaintiffs would purchase said premises.

The plaintiff Timothy C. Murphy, acting for himself and McGarry, secured an option on the property, and in September, 1907, soon after the execution of the lease by the plaintiffs, the plaintiffs purchased it and received a deed of it.

The building, No. 327 Main Street, referred to in the lease, was then a dwelling-house and as such was not adapted to the moving-picture theater business.

As part of the consideration for the execution of said lease, the plaintiffs stated to said Meyers and Schwaner, Jr., and orally agreed with them, that they, the plaintiffs, would change said house and erect said building in the rear, in accordance with certain plans and specifications drawn in accordance with the desires and instructions of said lessees; but the street front of

the building was to be left open in accordance with the plans, and it was agreed that the building would be ready for occupation when completed and ready to receive the front. It was further agreed that said front was one of the fixtures of the moving-picture theater business, and that the said front should be put in by the lessees in accordance with their own plans, and should be suitable for the business.

The plaintiffs reconstructed the interior of the dwelling-house so as to make one continuous room fifteen feet wide and eighty-one feet long, extending from the front of said building to, and into the rear of, the new building erected on said premises. The floor of said room was constructed to the line of the sidewalk in the front of the premises, over five feet beyond the sidewalls of said dwelling-house, and was in such condition November 15th, 1907. No front whatever was constructed by the plaintiffs.

Before entering into said lease, the plaintiffs required the lessees to procure some responsible person as a guarantor. On August 30th, 1907, the plaintiffs signed and acknowledged the lease in duplicate, and then handed the same to said Schwaner, Jr., to be signed and acknowledged by the lessees, and to procure the signature of the guarantor. On September 4th, 1907, said Schwaner, Jr., who lived with his father, the defendant, requested him to sign said guaranty, which he did. Subsequently, on September 5th, the lessees signed and acknowledged said lease in duplicate, and soon thereafter delivered said lease so signed by them, with guaranty signed by the defendant, to the plaintiffs, which lease was accepted by them.

The plaintiffs made all changes and did everything required to be done on said premises under, and in accordance with, said plans and specifications, without alteration therefrom, or addition thereto, before Novem-

ber 15th, 1907, and the premises were ready for occupation by the lessees under said lease on said November 15th.

On November 15th, 1907, the lessees accepted and took possession of the leased premises, and posted notice thereon that the same would soon open as a moving-picture theater, and attempted to sublet them. Said Schwaner, Jr., took measurements of said premises in reference to said front, and consulted with a contractor with reference to constructing an ornamental front for the lessees similar to those in use in other places for exhibitions of this kind. The lessees never put in said front, and never actually occupied said premises.

As the rent came due, it was duly demanded, but has not been paid.

After November 15th, 1907, said Schwaner, Jr., at different times showed said premises to different persons, and endeavored to sublet the same.

The defendant objected to parol evidence that it was agreed that the front was a fixture of the moving-picture business to be built by the lessees; to the testimony of the plaintiffs that the premises were ready for occupancy November 15th, and that the lessees accepted the same without objection. These objections were overruled and the evidence admitted.

*Hadlai A. Hull* and *Frank L. McGuire*, for the appellant (defendant).

*Donald G. Perkins* and *Wallace S. Allis*, for the appellees (plaintiffs).

HALL, C. J. Want of title in the plaintiffs to the premises at the time the lease was delivered is not a defense to this action. The plaintiffs acquired title

September 24th, and before the commencement of the term on November 15th. The title acquired by the plaintiffs September 24th, rendered the previously delivered lease effective. *Salisbury Savings Bank* v. *Cutting*, 50 Conn. 113, and note, 122; *Wheeler* v. *Young*, 76 Conn. 44, 48, 55 Atl. 670. The lessees do not claim that the plaintiffs' title was defective. They are estopped from doing so; *Camp* v. *Camp*, 5 Conn. 291, 300; and the defendant's guaranty of the payment of rents by the lessees imports an agreement, which he cannot deny, that the lease was a binding obligation upon the parties to it. *Remsen* v. *Graves*, 41 N. Y. 471. From the nature of the contract of a guarantor or a surety, his liability is ordinarily measured by that of the principal. *Bernd* v. *Lynes*, 71 Conn. 733, 43 Atl. 189.

It is immaterial that defendant signed the guaranty subsequent to the drafting of the lease and to the signing of the lease by the plaintiffs. The lease and guaranty were finally delivered and went into effect at the same time, and before liability was incurred under the lease. They will be deemed to have been executed contemporaneously; *Maher* v. *Building & Loan Asso.*, 79 Ill. App. 231; *Kennedy & Shaw Lumber Co.* v. *S. S. Construction Co.*, 123 Cal. 584, 56 Pac. 457; and therefore no other consideration for the guaranty was required than that moving between the plaintiffs and the lessees. *Bickford* v. *Gibbs*, 8 Cush. (Mass.) 154.

We agree with the claim of the defendant, that the extent of his liability is to be measured by the language of the lease and of the guaranty, and that any material change, without his consent, in the terms of the written contract which he guaranteed, would effect his discharge. *Village of Chester* v. *Leonard*, 68 Conn. 495, 508, 37 Atl. 397; Stearns on Suretyship, § 146. The real question upon this branch of the case is, does it

appear that the terms of the written lease have, by the agreements and acts of the plaintiffs and the lessees, been thus materially changed?

It is the defendant's contention that by an agreement between the plaintiffs and the lessees, not contained in the lease, and made without the defendant's consent, by which it was arranged that the plaintiffs should not construct a front to the building, and that the front should be built by the lessees, they not only changed the provision of the lease, that the term should begin when the premises were ready for occupancy, but relieved the plaintiffs from the duty imposed upon them by the lease of making certain changes which were necessary to render the premises ready for occupancy, and imposed the duty of making them upon the tenants.

The trial court has found that the premises were ready for occupancy on the 15th of November. This is in effect a decision that upon the facts found the premises were then "ready for occupancy," within the reasonable meaning of those words as used in the written lease. Our inquiry then is, did the court err in so holding?

These words of the written lease are of course to be read in the light of the circumstances surrounding the parties, and of the other provisions of the lease. While parol evidence was inadmissible to contradict or vary the terms of the written lease, such evidence could properly be received to show the meaning of these words, as understood by the parties at the time the lease was made, and the meaning which may properly be given to them when used in connection with the leasing of premises for a certain business. *Parker* v. *Selden,* 69 Conn. 544, 552, 38 Atl. 212; *In re Curtis-Castle Arbitration,* 64 Conn. 501, 514, 30 Atl. 769; *Hildreth* v. *Hartford, M. & R. Tramway Co.,* 73 Conn. 631, 636, 48 Atl. 963.

The law does not define the precise condition in which premises must be, in order to render them "ready for occupancy." That depends largely upon the purpose for which the premises are to be used. Different conditions in buildings would be required to render them ready for occupancy as places of residence and places of business. These premises were leased to be used as a moving-picture theater. Just what was required to render them ready for occupancy for that purpose, or what constitutes the fixtures of a moving-picture business, we are unable to say, except as it appears from the record before us. The plaintiffs did not agree to furnish or construct fixtures for the moving-picture business. The lease expressly provides that they shall be furnished by the lessees. It is apparent from the language of the lease that the plaintiffs were not to make all the changes in the buildings, and construct the appliances and fixtures necessary to enable the lessees to at once proceed with their exhibitions at the commencement of the term of the lease, which was to be when the premises were "ready for occupation." The lease by its language clearly shows that the parties contemplated that alterations necessary to the actual conduct of this business were to be made by the lessees at their own expense. By the words "ready for occupancy," we think was meant that the plaintiffs should put the premises in such condition that the lessees could take possession and install, at their own expense, the fixtures and appliances peculiar to the moving-picture business and necessary to enable them to proceed with their exhibitions. Prior to the making of the written lease it was in effect understood and agreed between the plaintiffs and the lessees in what condition the premises must be, in order to be "ready for occupancy" and for the lessees' term to begin. By such agreement they were to be ready for occupancy when

the building in the rear was constructed, and the front building altered in accordance with certain agreed plans and specifications and so as to connect with the rear building and make with it one continuous room; and the building was to be left by the plaintiffs without a front, because it was agreed that the front "was one of the fixtures of the moving-picture theater business," and was therefore to be put in by the lessees.

This agreement between the plaintiffs and the lessees was made prior to the making of the written lease, and the words "ready for occupancy" and "alterations in the premises that are necessary in the conduct of their business" were presumably used to express this previous understanding. It was not necessary that the lease should state particularly what the plaintiffs were required to do in order to render the premises ready for occupancy. The language of the lease is sufficiently comprehensive to include the actual intention and previous understanding of the parties to it.

On the 15th of November the plaintiffs had rendered the premises "ready for occupancy" in accordance with the meaning of those words in the lease, and to the entire satisfaction of the lessees. The terms of the contract which the defendant guaranteed were not altered by the agreement or conduct of the plaintiffs and the lessees.

There is no error in the rulings or decision of the trial court.

In this opinion the other judges concurred.