TORRINGTON COMPANY v.
METAL PRODUCTS WORKERS UNION LOCAL 645

SUPERIOR COURT     LITCHFIELD COUNTY     FILE No. 12479

Memorandum filed August 25, 1949

*Carmody, Larkin & Torrance,* of Waterbury, for the Plaintiff.

*Margaret Connors Driscoll,* of Bridgeport, for the Defendant.

QUINLAN, J. This application to vacate an arbitration award, for one reason or another, met the unsatisfactory fate of being heard in four parts, making for some disconnectedness. The facts underlying the arbitration, while of interest, require no relation, except later incidental reference, because the arbitration resulted favorably to the plaintiff (petitioner) and

because both parties are agreed that, involving a discharged employee as it did, it would appertain to the words "wages, hours and working conditions."

The question before me is essentially a legal one concerning language in § 1d of the provision on grievance procedure in the agreement of September 2, 1948, reading, "any grievance not settled in the third step above which involves the interpretation or application of a provision of this contract may be referred to arbitration by either party," and involves the meaning of the words "interpretation" or "application." The three steps referred to, as used in the contract, were taken, and instead of the usual joint submission for arbitration the company refused, but participated before the board, reserving the protection of its rights on the ground that the question was not arbitrable under the contract. So there were submitted to the board the questions whether the matter submitted was arbitrable under the contract and agreements between the two parties, and whether Ralph Manfredonia was unjustly discharged. The board held the question arbitrable and that Manfredonia was justly discharged.

There had been a strike; there was a previous contract; there were agreed clauses for a new contract and unresolved issues, when Commissioner Egan came on the scene. There is no doubt there was considerable agitation about the arbitration clause, not to say confusion. There was objection by the company to the language in the old contract and a new suggested phrase, viz., "question of compliance by either party with the terms of this agreement." These words were eliminated.

On the trial before me, while both parties claimed that the existing language as to arbitration was not ambiguous, nevertheless on the plaintiff's side the facts and circumstances concerning the intention of the parties were advanced vigorously but not too unmistakably, while the defendant asserted that the language had a well-established meaning by usage and custom. To the dissatisfaction of both parties I admitted both lines of testimony. See *Maltby, Inc.,* v. *Associated Realty Co.,* 114 Conn. 283, 289; *In Re Curtis-Castle Arbitration,* 64 Conn. 501, 514; *Murphy* v. *Schwaner,* 84 Conn. 420, 428; Richardson, Evidence, p. 343; 32 C. J. S. 901; Restatement, 1 Contracts §§ 245, 246, 247, 248 and 249. This was not to vary, alter or add to the contract in any sense, but to determine the intent they meant to express by the phrase they used.

This is, of course, not an appeal from an administrative board. The board interpreted the disputed language according to the language of the clause itself.

The plaintiff in order to sustain its position had to rely on Commissioner Egan. There were no joint meetings in negotiation between management and the union. Proposals and cross-proposals were made through Mr. Egan. Mr. Egan says he did not tell the union what the company meant by the words "interpretation" and "application of" and, moreover, at least in the early stages, told the attorney for the plaintiff, in effect, that, if arbitration were to be leveled to the point of treating a grievance as a violation with resort to the courts, not only was it not a good labor-management relationship but he (Egan) would have nothing to do with it. On the evidence, not only was the company's meaning not communicated to the union for a certainty, but what is not communicated can hardly be agreed upon and hence intended.

For the defendant, we have the expert testimony of Professor Shulman, who testified that the phrase "interpretation and application," as it has been commonly used in the war labor board and elsewhere, is designed to limit the arbitration to the contract terms as distinguished from the arbitration of matters outside of the contract "and to enable the arbitrator to make a final disposition in accordance with the contract." He also said that discharges are typical grievances and that except for employments of a highly confidential or highly skilled nature, such grievances were not excluded from arbitration. The authorities cited by the parties are for the most part from labor arbitration sources, the bulk of which seems to support Professor Shulman, and not from courts.

Considerable stress was laid on the claim that arbitrators not only vary on the meaning of the language but that one James J. Healy, who was vice chairman of the war labor board, had decided both ways. Citing *Bliss* v. *Laughlin, Inc.*, reported in 11 L. A. 858. It is true that the arbitration clause reads similarly to the one under review, but it seems to me that, while Mr. Healy ruled that "under the terms of the present contract the question of the appropriate rate for a new job classification is not an arbitrable matter," he was not only adhering to the usual meaning given the words "interpretation" and "application of," but, referring to the contract in that case, it apparently disclosed no provision whose meaning or appli-

cation was affected by the point in issue. It is also consistent with the testimony of Professor Shulman and the meaning given to the words by the board in this case. Moreover, in the contract here in the call-back or return call provision it is provided that "any abuse or threats or intimidation of any employee because of the strike shall be cause for discharge." Page 36, 1948 Agreement. I quite agree with the plaintiff, as I think Mr. Healey did, in the case cited, that all grievances are by no means the subject of arbitration but only those touching the contract, and here the return call provision is affected. In 5 CCH. Lab. Law Rep. par. 53520, under scope of arbitration, it is said: "With the end of the War and the end of the controls on labor disputes represented by the War Labor Board, both labor and management recognized that it was more important than ever that the parties in each collective bargaining situation should have effective means of deciding contract grievances when they could not agree. This conviction materialized in one of the recommendations adopted unanimously by the National Labor-Management Conference in Washington held during November 1945. The report of the Conference included the following recommendations: '1. Collective bargaining agreements should contain provisions that grievances and disputes involving the interpretation or application of the terms of the agreement are to be settled without resort to strikes, lock-outs, or other interruptions to normal operations by an effective grievance procedure with arbitration as its final step . . .' "

The answer might be that none of these blocking interruptions woud be employed if resort were had to the courts but violence might be done to labor-management relations, as well as to what appears to have become a recognized and valuable process, viz., arbitration procedure.

On the facts derived from the evidence, I cannot find the intention urged by the plaintiff (management) because of the failure of Mr. Egan to suport the claim that it was communicated to the union and therefore I accept the construction put upon the language by the board, supported by Professor Shulman and such legal authorities as I have had available.

The petition to vacate is denied.